**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**


**BOUCHET & COMPANY, INC.,**

            **Plaintiff,**

       **v.**

**COMMERICAL VEHICLE GROUP,
INC.,**

            **Defendant.**

**Case No. 15 C 10333**

**Judge Harry D. Leinenweber**


<u>**MEMORANDUM OPINION AND ORDER**</u>

## I. <u>BACKGROUND</u>

The Plaintiff, Bouchet & Company ("BC"), is a consulting firm headquartered in Evanston, Illinois. BC provides management consulting services. The Defendant, Commercial Vehicle Group, Inc. ("CVG") is an Ohio-based commercial vehicle parts manufacturer and offers a variety of products for the commercial vehicle market. Many of its products rely on external purchases, including materials, components, and maintenance, repair, and overhaul services. On October 3, 2014, BC and CVG entered into an Agreement for BC to conduct a Global Stampings Strategic Sourcing Initiative ("GSSSI") for CVG. The objective of the initiative was to achieve external cost reduction by obtaining significant reductions in the cost of

goods purchased in the short term and to ensure sustainable cost reductions in the future.

The GSSSI Agreement obligated CVG to pay BC a consulting fee on a sliding scale based on savings for CVG that BC was able to identify. From October 14, 2014 to November 12, 2015, BC undertook the GSSSI on CVG's behalf. In November 2015, a dispute arose as to the calculation of BC's consultant fee. The GSSSI Agreement contained a fee arrangement that consisted of certain fixed fees and certain contingent fees that depended on results of the cost savings initiatives. The term used in the GSSSI Agreement upon which the contingent fees were to be based was "identified annual savings." The fixed fees were to be refundable if the savings were below 1% of the sourceable spend. They were to be nonrefundable if the savings were between 1% and 4.75%. If the savings were above 4.75%, BC would receive a fee based on a 1-to-1 percentage of savings, *e.g.*, if the savings constituted 5% of the purchase spend or more, then the fee would be 5% of the savings, up to 10%. If the savings were higher than 10%, the fees would increase on a further sliding scale but less than 1 to 1.

The dispute in this case centers on the definition of the phrase Identified Annual Savings. DC contends that they are the savings that are identified at the time CVG obtains its cost commitments. CVG, on the other hand, contends that the phrase

means "actual savings" that are identified at the time the actual savings are realized. In other words, no savings calculations until the actual savings are realized. BC has sued for breach of contract (Count I) and for Promissory Fraud (Count II)

## II. <u>DISCUSSION</u>

### A. Count I – Breach of Contract

BC has moved for summary judgment contending that there is no issue of fact as to the interpretation of the fee provision in the GSSSI. CVG argues strenuously that the savings provision is ambiguous and there is no evidence that shows the parties had a mutual understanding of the meaning of the phrase at the time of the execution of the Agreement.

BC makes a multi-faceted argument on behalf of its Motion. First, it argues that a party to a contract, particularly, one experienced in business such as CVG, has a duty to learn about and know the contents of a written contract before it executes it, and there is no duty on the part of a contracting party to advise the other party of the contents of the agreement. *All American Roofing, Inc. v. Zurich American Ins. Co.,* 404 Ill. App. 3d 438, 448 (1st Dist. 2010); *Nilsson v. NBD Bank of Illinois,* 313 Ill. App. 3d 751, 763 (1st Dist. 1999). BC points out that CVG did not even bother to send the contract to its legal counsel for review prior to its execution. Second, BC

points out that the CVG executives had more than 100 years of parts procurement experience between them and certainly knew the difference between "identified" and "actual" savings.   Third, CVG's CEO, Richard Lavin, testified that he had instructed CVG's Chief Administrative Officer, Ulf Lindqwister, to negotiate on CVG's behalf for fees based on realized savings rather than identified savings.   However he failed to review the proposed contract to see if that provision had been included.   Fourth, BC argues that the phrase "identified savings" is not susceptible to being confused with "realized savings."   In support of this argument BC had suggested that the parties check the internet for the meaning of the phrase.   The internet showed the meaning of "identified savings" and "realized savings" were well known. In other words, there is no ambiguity and the Court should decide the case based on the clear meaning of the terms. Finally, BC argues that Lindqwister prepared, well after he executed the GSSSI on CVG's behalf, a document entitled "key amendments we are proposing to the Bouchet & Company contract." His point no. 3 stated:

> "CVG proposes that Bouchet & Company be compensated for the actual annualized savings on a phased-in approach.  After the negotiations are finalized with the individual suppliers and agreements are in place, and both parties achieve agreement on the amount of actual annualized savings for the specific wave, Bouchet & Company would invoice per the terms of the 'commercial arrangements and obligations' section of the agreement dated October 2, 2014."

Therefore it is obvious that Lindqwister understood the difference or he would not have sought an amendment to achieve "actual savings" as the measuring stick for BP's fees.

Against this impressive array of arguments CVG is left with its sole argument that it did not understand the difference between "identified" and "realized" savings because the phrase was not defined in the contract. It further argues that it is not in the consulting business and would not necessarily know what the term meant, even though the phrases are well known in the procurement business.

The threshold inquiry when interpreting a contract is whether the contract is facially ambiguous, *i.e.,* is it susceptible to more than one meaning. *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1036 (7th Cir. 1998).

> "An instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract. A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms."

*Flora Bank & Trust v. Czyzewski,* 222 Ill. App.3d 382, 388 (5th Dist. 1991).

Here the contract undeniably uses the phrase "identified annual savings" as the measuring stick to determine the contingent fee owed by CVG to BC and not the phrase "identified

actual savings." The latter was an item on Lindqwister's list of changes he was proposing to the GSSSI Agreement. Another obvious indication that the fee was to be based on identified savings rather than actual realized savings was the provision in the GSSSI Agreement that the "[t]otal professional fee [were} to be calculated and paid upon completion of the project, based on mutually agree and documented identified annual savings[.]" If the savings could not be calculated until CVG actually achieved the savings, *i.e.,* "actual," the savings could not be calculated at the conclusion of the project.

An indication that CVG knew this was the memorandum written by CVG's Chief Accounting Officer, Stacie Fleming, that:

> "there is no feasible way to defer the recognition of the liability associated with Bouchet's work. . . . The trigger for liability is the fact that Bouchet will have completed his requirements under the contract as of the end of 2015 and we will be able to estimate the total amount of the payout. . . . We will have already received the benefit of the agreement (*i.e.,* Bouchet's expertise and recommendations) so we are obliged to pay him for his services."

CVG argues that this statement is not admissible because it was part of her decision to establish a litigation reserve which is routinely denied admission. *See, e.g., Hart v. RCI Hospitality Holdings, Inc.,* 90 F.Supp.3d 250, 279 (S.D. N.Y. 2015). However, unlike a litigation reserve, Fleming was suggesting that CVG calculate a fee estimate prior to the completion of the

contract, which was close to happening and when the fee would be due.

Based on the actual wording of the contract the Court finds that there is no ambiguity as to the meaning of the phrase "identified annual savings." This was the term that was employed in the contract, and not "identified actual savings." Therefore, the base for calculating the contingent fee owed Bouchet was the savings that could be identified after the "sourceable spend" (expense) was determined. The Court therefore grants summary judgment on Count I — Breach of Contract on the issue of liability, leaving the amount of damages for determination by a jury.

**B.  Count II – Promissory Fraud**

The basis of BC's promissory fraud claim is that CVG made a promise to pay BC a fee that it had no intention of paying. It bases this claim on Lindqwister's testimony that he only intended to pay "realized" savings and his testimony that he believed that the contract he executed on CVG's behalf only obligated CVG for phase 1 of the GSSSI, "Opportunity Assessment" and not phase 2, "Strategic Sourcing Initiative." BC also relies on the testimony of Jim Buddelmeyer, CVG's Chief of Global Supply, that he knew that Bouchet expected to be paid based on identified savings and nevertheless stood by and let Bouchet perform all of the work required under the contract well

knowing that CVG did not intend to honor its commitment to pay Bouchet based on identified on identified savings.

However, as CVG points out, the burden to establish promissory fraud is deliberately high to prevent every breach of contract claim from becoming a tort claim. *Krieger v. Adler, Kaplan & Begy,* No. 94 C 7809, 1997 WL 323827 at *6 (N,D. Ill. June 11, 1997). Here CVG has taken the position that it truly believed that the contingent fee was to be based on "realized" savings. True, the Court has ruled that this position was unreasonable based on a clear reading of the contract. However, the Motion for Summary Judgment is being brought by the Plaintiff and not the Defendant, so CVG is entitled to have a jury assess the believability of its intentions concerning the payment of fees to Bouchet. Accordingly, the Motion for Summary Judgment on Count II is denied.

## C. Motions to Strike

CVG filed a Motion to Strike the e-mail of Stacey Fleming quoted above based on its argument that it had not been referenced in BC's opening brief and that it was inadmissible. CVG asked in the alternative that it be allowed to file a sur-rebuttal which the Court allowed. For the reason articulated above, the Court believes that the e-mail was admissible and the Motion to Strike it is denied.

BC moved to strike portions of CVG's responses to Plaintiff's Statement of Material Undisputed Facts. To say that BC filed an improper Local Rule 56.1 statement falls way short of an accurate description of its 56.1 statement. Perhaps a short quote from the Rule is in order. "The statement referred to in (3) [statement of material facts] shall consist of short numbered paragraphs . . . Absent prior leave of Court, a movant shall not file more than 80 separately numbered statements of undisputed material fact." Plaintiff has filed a useless Rule 56.1 Statement. Instead of "short numbered paragraphs" BC filed multi-sentence collections presumably taken from depositions. CVG, instead of filing a Motion to Strike, heroically parsed each prolix paragraph and responded to each separate sentence with a "disputed" or "undisputed." The only problem with this response is that was virtually impossible for the Court to determine what was and what was not disputed without spending untold hours attempting to match the sentences with the designations. A few egregious examples will suffice: Statement No. 5 consists of 15 separate sentences; No. 10 - 6 sentences; No. 48 - 9 sentences; No. 50 - 10 sentences; and No. 73 - 14 sentences. While the Court was sorely tempted to strike the Statement and deny the Motion, the Court instead read the supporting documents and concluded that there really was no dispute as to the meaning of the phrase in question and resolved

the Motion accordingly.  The whole idea of the Rule 56.1 Statement was to make it easy for the Court to determine whether there is, in fact, a dispute that is material.  The document submitted by Plaintiff did not help and in a way obfuscated the issue of factual controversy.  The Motion to Strike CVG's responses is resoundingly denied.

### III.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.  Plaintiff's Motion for Summary Judgment [ECF No. 58] on Count I is granted on the issue of liability;

2.  Plaintiff's Motion for Summary Judgment [ECF No. 58] on Count II is denied;

3.  Defendant's Motion to Strike [ECF No. 114] is denied; and

4.  Plaintiff's Motion to Strike [ECF No. 112] is denied.


**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/24/2016